FILED ____ ENTERED
____ LODGED ____ RECEIVED

OCT 15 2019

AT BALTIMORE
CLERK U.S. DISTRICT COURT
DISTRICT OF MARYLAND
BY ____ DEPUTY

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| RANDOLPH BERTRAND, | * | |
| Plaintiff, | * | |
| v. | * | Civil Action No. RDB-17-3265 |
| TOWN OF ELKTON, | * | |
| Defendant. | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM OPINION

Plaintiff Randolph Bertrand ("Plaintiff" or "Bertrand") filed suit against his former employer, the Town of Elkton ("Defendant" or "the Town") and Police Chief Matthew Donnelly in his individual and official capacities (collectively, the "Defendants"), alleging that Defendants had discriminated against him in violation of the Americans with Disabilities Act, as amended, 42 U.S.C. § 12101, *et seq.* ("ADA") and the Age Discrimination in Employment Act, as amended, 29 U.S.C. § 621, *et seq.* ("ADEA"). Ultimately, by agreement of counsel and Order of this Court, two Counts were submitted to the jury as to one Defendant, the Town of Elkton: Count I, which alleged that the Town failed to provide Bertrand a reasonable accommodation and Count II, which alleged that Defendant discriminated against Bertrand due to his disability by terminating his employment. On May 29, 2019, the jury returned a verdict in the Town's favor on both Counts.

Now pending is Plaintiff's Motion to Alter and Amend the Judgment, and for Directed Plaintiff's Verdict, on Count I. (ECF No. 106.) The parties' submissions have been reviewed and no hearing is necessary. *See* Local Rule 105.6 (D. Md. 2018). Plaintiff has withdrawn his

motion for a directed verdict and now seeks a new trial as to Count I under Rule 59 of the Federal Rules of Civil Procedure. Plaintiff has failed to present adequate grounds for a new trial. Accordingly, Plaintiff's Motion (ECF No. 106) is DENIED.

## BACKGROUND

This case arises from Plaintiff Randolph Bertrand's allegation that the Town of Elkton unlawfully terminated his employment as a police officer in January 2014. In his Amended Complaint, Bertrand alleged that he had served as a police officer for the Town of Elkton between 1989 and January 2014. (*Id.* at ¶ 2.) During his employment, Bertrand experienced complications stemming from a workplace accident which occurred at some point in 2000. (*Id.* at ¶¶ 29-31.) In August 2013, he applied for and received medical leave under the Family Medical Leave Act ("FMLA") to obtain medical care related to his back problem. (*Id.* at ¶ 31.) Bertrand alleged that he was unable to return to work until about six months later, between February 3 and February 11, 2014. (*Id.* at ¶ 36.) While on leave, Bertrand allegedly requested the opportunity to perform light duty work assignments or to work in a vacant position in the "records room" as an accommodation for his disability. (*Id.* at ¶¶ 34, 148.) The Town allegedly denied these requests. (*Id.* at ¶ 34.) Instead, the Town continued to provide Bertrand leave beyond the 12-week period mandated by the FMLA,[1] which would have expired in November 2013. During this period, Bertrand obtain long term disability benefits. (*Id.* at ¶ 43.) On January 22, 2014, the Town terminated Bertrand's employment. (*Id.* at ¶ 41.) Following his employment termination, the Town offered to consider Bertrand's application for

---

[1] The FMLA "entitles eligible employees to take up to twelve weeks of unpaid leave in any twelve-month period for qualifying medical or family reasons." *See* 29 U.S.C. § 2612(a)

2

reemployment on the condition that he pass a physical and a "Fitness for Duty" exam. (*Id.* at ¶¶ 53-55.) It was alleged that the Town refused to reemploy Bertrand even though he passed these exams. (*Id.* at ¶¶ 54-56.) In April 2014, the Town allegedly notified Bertrand that he could apply as a new hire, which would require him to undergo extensive testing, including a polygraph test and background investigation, and to attend the police academy. (*Id.* at ¶ 58-59.)

On July 7, 2014, Bertrand filed a Charge of Discrimination with the Equal Opportunity Employment Commission ("EEOC"). (*Id.* at ¶ 81.) Bertrand subsequently amended the Charge on December 14, 2014. (*Id.*) In his EEOC filings, Bertrand alleged that he was discriminated against in violation of the Americans with Disabilities Act and the Age Discrimination in Employment Act. (EEOC Determination, ECF No. 1-2.) On December 8, 2016, the EEOC issued a Determination indicating that there was reasonable cause to believe that the Town discriminated against Bertrand in violation of the ADA,[2] but made no finding with respect to his ADEA claims. (ECF No. 1-2 at 3.) Subsequently, on August 22, 2017, the EEOC issued Bertrand a Right to Sue Notice. (Am. Compl. ¶ 82.) On November 20, 2017, Bertrand filed suit against the Town of Elkton and Police Chief Matthew Donnelly within 90-days of his receipt of the notice. (Compl., ECF No. 1.) An Amended Complaint followed on November 7, 2018. (Letter Order, ECF No. 24; Am. Compl., ECF No. 25.)

---

[2] The EEOC's cause determination is not legally binding in court. *See, e.g., Georator Corp. v. EEOC*, 592 F.2d 765, 768 (4th Cir. 1979) (stating that an EEOC reasonable cause determination "is lifeless, and can fix no obligation nor impose any liability on [the employer]").

3

The Amended Complaint brought five counts, alleging violations of the ADA and the ADEA. In Count I, Bertrand alleged that Defendants violated the ADA by refusing to provide him reasonable accommodations in the form of "light duty and/or reassignment to a vacant position during December 2013 and January 2014." (Am. Compl. ¶ 102.) In Count II, Bertrand alleged that Defendants discriminated against him in violation of the ADA by, *inter alia*, terminating his employment in January 2014. (*Id.* at ¶ 122.) Count III brought an ADEA claim based on substantially the same allegations articulated in Counts I and II, *i.e.*, that Bertrand had been denied light duty, reassignment to a vacant position, and reinstatement, but added that younger employees were provided these benefits. (*Id.* at ¶¶ 132-142.) Count IV, styled as a "Medical Inquiry Claim," alleged that the physical examinations which Bertrand was required to pass as a condition for reinstatement violated the ADA. (*Id.* at ¶¶ 143-146.) Finally, Count V, an "Interactive Process Claim," alleged that Defendant Donnelly violated the ADA by failing to engage in an interactive process with Bertrand after he allegedly requested accommodations in the form of light duty or reassignment to a vacant position within the records room. (*Id.* at ¶ 148.)

The case was trimmed before its submission to the jury. On February 22, 2019, this Court granted Plaintiff's Motion to Dismiss Defendant Donnelly. (ECF No. 43.) On May 2, 2019, following a motions hearing concerning cross-motions for summary judgment (ECF Nos. 35, 48), this Court entered Judgment in favor of Defendants on Count III, Bertrand's ADEA claim. (ECF No. 64.) On May 15, 2019, this Court dismissed Plaintiff's "Interactive Process Claim" by consent of all parties. Finally, on the fourth day of trial, May 23, 2019, Plaintiff moved to withdraw his "Medical Inquiry Claim" asserted in Count IV. Ultimately,

only two claims were submitted to the jury (Counts I and II) against one Defendant (the Town of Elkton).

On May 29, 2019, the jury returned a verdict in favor of Defendant on both Counts. On June 24, 2019, Plaintiff filed a "Motion to Alter and Amend the Judgment, and for Directed Plaintiff's Verdict, on Count I." (ECF No. 106.) Subsequently, Plaintiff withdrew his request for a directed verdict. (ECF No. 107.) He now seeks only a new trial on Count I pursuant to Rule 59 of the Federal Rules of Civil Procedure. (ECF No. 109 at 7.) The Town opposes the Motion. (ECF No. 108.)

## STANDARD OF REVIEW

Plaintiff moves for a new trial under Rule 59 of the Federal Rules of Civil Procedure. A litigant may seek relief from a jury verdict or judgment under Rule 59. The Rule presents "an extraordinary remedy which should be used sparingly." *Pacific Ins. Co. v. American Nat. Fire Ins. Co.*, 148 F.3d 396, 403 (4th Cir. 1998). Plaintiff repeatedly invokes Rule 59(e) and couches his arguments under that Rule. (ECF No. 106 at 1, 2, 14.) Motions for a new trial following a jury verdict are governed by Rule 59(a)(1)(A). *Butler v. Windsor*, 143 F. Supp. 3d 332, 335 (D. Md. Oct. 22, 2015). Accordingly, this Court will construe Plaintiff's Motion as seeking a new trial under Rule 59(a)(1)(A) to the extent that Plaintiff seeks a new trial. *See Jackson v. Egira, LLC*, RDB-14-3114, 2016 WL 6583604, at *1 (D. Md. Nov. 4, 2016) (construing Motion to Reconsider as a motion under Rule 59(a) of the Federal Rules of Civil Procedure insofar as it sought a new trial).

Under Rule 59(a)(1)(A), a court may grant a new trial on all or some issues "for any reason for which a new trial has heretofore been granted in an action at law in federal court." Fed. R. Civ. P. 59. The U.S. Court of Appeals for the Fourth Circuit has held that a court "must set aside the verdict and grant a new trial[] if . . . (1) the verdict is against the clear weight of the evidence, or (2) is based upon evidence which is false, or (3) will result in a miscarriage of justice, even though there may be substantial evidence which would prevent the direction of a verdict." *Knussman v. Maryland*, 272 F.3d 625, 639 (4th Cir. 2001) (citation omitted).

## ANALYSIS

Plaintiff seeks a new trial as to Count I of the Amended Complaint. (ECF No. 109 at 1, 7.) He argues that a new trial should be granted as to Count I because the evidence did not support the jury's verdict on that Count. Plaintiff's Motion also seems to suggest that a "miscarriage of justice" has occurred, as it expresses disagreement with various "erroneous legal arguments," purportedly advanced by the Defendant and makes repeated reference to "manifest injustice," a similar standard applicable under Rule 59(e). (ECF No. 106 at 1, 10, 13, 14.) Throughout his Motion, Bertrand repeatedly insists that the Town presented "no evidence" in support of its defense and from which the jury could find in its favor on Count I. (ECF No. 106 at 3, 4, 14.) His Motion opens by contending that judgment should have been entered in his favor on Count I and that this Court committed legal errors or permitted Defendant to introduce irrelevant evidence. (*Id.* at 4-9.) The remainder of Plaintiff's Motion takes issue with several "erroneous legal arguments" presented by the Defendant. All of these contentions are meritless. At trial, the jury was tasked with resolving a number of factual issues, including those related to whether Plaintiff could perform the essential functions of his

job and whether the Town had provided Plaintiff with a "reasonable accommodation." The jury resolved those issues in favor of the Defendant, and ample evidence supported their verdict. Accordingly, Plaintiff's Motion is DENIED.

I. **The evidence presented at trial supported the jury's verdict.**

To establish a *prima facie* case against the Town for the failure to accommodate his disability under the ADA, Plaintiff had the burden of showing: "(1) that he was a qualified individual with a disability; (2) that [the Town] had notice of his disability; (3) that with reasonable accommodation he could perform the essential functions of the position; and (4) that [the Town] refused to make such accommodations." *Wilson v. Dollar General Corp.*, 717 F.3d 337, 345 (4th Cir. 2013) (quoting *Rhoads v. Fed. Deposit Ins. Corp.*, 257 F.3d 373, 387 n.11 (4th Cir. 2001)). The evidence presented at trial supported a finding that Plaintiff had failed to establish the elements of a *prima facie* case. Accordingly, this Court need not grant a new trial.

> **A. The evidence supported a finding that the Plaintiff was not a qualified individual.**

The ADA prohibits discrimination against "qualified individuals" with respect to "job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). The statute defines a "qualified individual" as a person "with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8). As the jury was instructed, the individual must be "qualified" at the time of the adverse action in

7

question—in this case, at the time of employment separation. *Pollard v. High's of Baltimore, Inc.*, 281 F.3d 462, 470 n.3 (4th Cir. 2002) (quoting *EEOC v. Stowe-Pharr Mills, Inc.*, 216 F.3d 373, 379 94th Cir. 2000)).

As the United States Court of Appeals for the Fourth Circuit has repeatedly expressed, consistent attendance is an "essential function" of most jobs. *Hannah P. v. Coats*, 916 F.3d 327, 339 (4th Cir. 2019) (quoting *Tyndall v. Nat'l Educ. Ctrs., Inc.*, 31 F.3d 209, 214 (4th Cir. 1994)); *see also Lewis v. Univ. of Md., Baltimore*, SAG-12-298, 2012 WL 5193820, at *4 (D. Md. 2012) ("Because Ms. Lewis could not attend work or perform work, she could not 'perform the essential functions of the job in question.'"), *aff'd*, 533 F. App'x 270 (4th Cir. July 18, 2013). An employee who has not been cleared to return to work at the time of employment separation cannot perform this essential function, and consequentially is not a "qualified individual" under the ADA.[3] *Gantt v. Wilson Sporting Goods Co.*, 143 F.3d 1042, 1047 (6th Cir. 1998) (citing *Tyndall*, 31 F.3d at 213); *see also Anderson v. Inland Paperboard & Packaging*, 11 F. App'x 432, 438, 2001 WL 406463 (6th Cir. 2001) (holding that plaintiff was not "qualified" for her job as a storeroom clerk because her doctor had not yet released her from work at the time of her employment separation); *Crow v. McElroy Coal Co.*, 290 F. Supp. 2d 693, 696 (N.D.W. Va. 2003) ("Because Crow failed to obtain a release to work from his doctor, Crow has not shown that he can perform the essential functions of the job with or without reasonable accommodation."), *aff'd*, 77 F. App'x 649, 2003 WL 22293708 (4th Cir. Oct. 7, 2003); *Gower v.*

---

[3] Plaintiff briefly argues that this rule of law was presented "somewhat vaguely" in Court's Instruction Number 22. Whether Plaintiff intends to challenge this jury instruction is unclear, as he argues that the instruction favored his position. (ECF No. 106 at 14.) There was nothing vague about this jury instruction. The proposition that an employee is not "qualified" if he has not been released to work is amply supported by case law.

8

*Wrenn Handling*, 892 F. Supp. 724, 727 (M.D.N.C. 1995) (noting that there was "no dispute" that employee was not qualified for a particular position because his doctor had not released him to return to work).

In this case, the jury was required to resolve whether Plaintiff could perform the essential functions of his job, including his basic obligation to attend work, at the time of his employment termination. The jury was presented with evidence that Bertrand had submitted a series of doctor's notes between August 2013 and January 2014, each of which promised a return-to-work date that was subsequently delayed. The first note, dated August 13, 2013, promised a return to work date of August 26, 2013. (Def. Ex. 25.) Additional notes extended Plaintiff's expected return to September 9, 2013 (Def. Ex. 29); to September 16, 2013 (Def. Ex. 30); to September 30, 2013 (Def. Ex. 31); to October 18, 2013 (Def. Ex. 32); to November 11, 2013 (Def. Ex. 34); to December 9, 2013 (Def. Ex. 37); and to December 18, 2013 (Def. Ex. 40). Finally, on January 2, 2014, Bertrand's doctor penned a note indicating that he could not return to work until a month later, on February 3, 2014. (Pl. Ex. 14.) The notes supported a factual finding that Plaintiff was not, in fact, cleared to return to work as of January 22, 2014, the date of his employment termination.

Alternatively, the jury could have concluded that Bertrand would never be able to return to work. His potentially unending series of doctor's notes, each extending his return-to-work date beyond that which was previously promised, suggested that Bertrand would never resume his duties. Indeed, the evidence indicated that Bertrand's doctor amended the return-to-work date as a result of information indicating Bertrand's termination. (Pl. Ex. 39.) On that same date, February 11, 2014, Bertrand sent a note indicating that he was suddenly

9

available to return to full time duty. (Def. Ex. 58.) Additional evidence supported the conclusion that Bertrand had never intended to resume his duties, including evidence that Bertrand had obtained long term disability benefits during his leave of absence. These factual findings alone would permit a defense verdict on Count I because an employee's failure to attend his job precludes that employee from establishing that he is a "qualified individual" under the ADA.

Plaintiff makes much of the fact that the Chief of Police testified that he was terminated in "good standing," and that he was not fired for disciplinary reasons. (ECF No. 106 at 5, 12.) An employee's good performance is not dispositive of whether he is a "qualified individual" under the ADA. As the Fourth Circuit explained in *Tyndall*, "[in] addition to possessing the skills necessary to perform the job in question, an employee must be willing and able to demonstrate these skills by coming to work on a regular basis." *Tyndall*, 31 F.3d at 213. Accordingly, the mere fact that Plaintiff was in "good standing" with the Town of Elkton before he lost his employment does not suggest that he was qualified under the ADA. The jury was permitted to conclude that, despite his "good standing," Plaintiff was unable to perform the essential functions of his job because he had not attended work for six months, he was not cleared to return to work on the date of his termination, and he would never be able to return.

Plaintiff also complains that the Town was permitted to introduce evidence that he used Percocet to alleviate his persistent back pain. He argues that the jurors were confused by this evidence and improperly considered it when deliberating over whether Plaintiff was a "qualified individual." (ECF No. 106 at 4; ECF No. 109 at 4-5.) Plaintiff's speculation

concerning juror confusion on this point has no basis in the record. Before the trial began, this Court instructed counsel for the Defendant to refrain from suggesting that Plaintiff was addicted to Percocet. Defendant followed these instructions throughout the trial and did not suggest that Plaintiff's use of Percocet hindered his work performance.

Any references to drug use were limited to the Defendant's theory that Plaintiff had refused to undergo the necessary procedures for obtaining reinstatement with the Town. Defendant presented evidence that Plaintiff would have to undergo a recertification process, which included drug screening and a lie detector test regarding drug usage, to regain his employment with the Town. It was suggested that Plaintiff did not wish to undergo this process because of his use of Percocet. There is no basis to infer that the jury was confused by these careful references to Plaintiff's use of prescription drugs.

In sum, the jury had sufficient evidence to conclude that Plaintiff was not a "qualified individual" protected by the ADA. His failure to attend work for several months, procession of doctor's notes perpetually delaying his date of return, and qualification for long term disability benefits supported this conclusion. Accordingly, a new trial is not required.

### B. The evidence supported a finding that the Town's provision of unpaid leave was a reasonable accommodation.

Alternatively, the evidence supported the conclusion that the Town provided a reasonable accommodation in the form of unpaid leave. A reasonable accommodation is "that which presently, *or in the immediate future*, enables the employee to perform the essential functions of the job in question." *Myers v. Hose*, 50 F.3d 278, 283 (4th Cir. 1995) (emphasis added). In some cases, a temporary leave of absence may constitute a reasonable

11

accommodation. *Moore v. Md. Dep't of Pub. Safety & Corr. Servs.*, CCB-11-553, 2011 WL 4101139, at *3 (D. Md. Sept. 12, 2011) (citations omitted). However, an employer is never required to wait "'an indefinite period of time to correct a disabling condition' that renders [an employee] unqualified." *Halpern v. Wake Forest Univ. Health Sciences*, 669 F.3d 454, 465 (4th Cir. 2012) (quoting *Myers*, 50 F.3d at 280); *see also Moore*, 2011 WL 4101139, at *3 (explaining that the ADA does not require employers to provide an indefinite leave of absence). The issue of whether a particular accommodation is reasonable in a given case is a factual issue that the jury must resolve. *Pandazides v. Virginia Bd. of Educ.*, 13 F.3d 823, 833 (4th Cir. 1994).

Plaintiff baldly states that there was "no evidence presented that Plaintiff was granted an accommodation." (ECF No. 106 at 9.) This assertion defies the record. Plaintiff's medical leave under the FMLA expired in November 2013. There was no dispute that Plaintiff requested time off from work beyond that date, and that the Defendant provided it. On November 8, 2013, Plaintiff submitted a doctor's note which indicated that he could return to work on December 9, 2013. (Def. Ex. 37.) On December 2, 2013, a Town representative sent Plaintiff a letter indicating that "we look forward to your return to work on December 9, 2013." (Def. Ex. 39.) Subsequent notes extended Plaintiff's return date, and the Town permitted Plaintiff to remain absent from work until January 22, 2014. The jury was permitted to conclude that this provision of additional leave was reasonable.

Plaintiff complains that there was "zero evidence" that the Town could not provide *even more* leave. (ECF No. 106 at 11.) He argues that "one could infer" that 10 more months of leave would have been reasonable, as another employee did not fill Plaintiff's position until November 1, 2014. (*Id.*) It was the jury's role, however, to determine whether Plaintiff's

12

repeated requests for additional leave were reasonable. The jury was within its bounds to conclude that Plaintiff's request to remain absent from work until February 3, 2014 was unreasonable, as he had repeatedly extended his expected date of return and there was no indication that he would in fact be ready to return to work in February. Based on these conclusions, the jury could find for the Defendant on Count I.

## II. Defendant's mere failure to engage in the interactive process did not require a verdict in favor of the Plaintiff on Count I.

Plaintiff repeatedly argues that this Court must grant a new trial on Count I because Defendant failed to engage in an interactive process to uncover alternative accommodations, such as a light duty position. (ECF No. 106 at 9-11, 13.) The ADA requires employers "to engage with their employees in an interactive process to identify a reasonable accommodation." *Jacobs v. N.C. Admin. Office of the Courts*, 780 F.3d 582, 581 (4th Cir. 2015) (quoting *Wilson*, 717 F.3d at 346). This duty arises when an employee communicates that he has a disability and desires an accommodation. *Id.* at 346. As the jury was instructed, however, an employer's mere failure to engage in the interactive process does not give rise to liability so long as the employee ultimately receives a reasonable accommodation. *Walter v. United Airlines, Inc.*, 232 F.3d 892, 2000 WL 1587489 (4th Cir. 2000) (unpublished, *per curiam*); *see also Snapp v. United Transportation Union*, 889 F.3d 1088, 1095 (9th Cir. 2018) ("[T]here exists no stand-alone claim for failing to engage in the interactive process."); *Noll v. Int'l Bus. Machs. Corp.*, 787 F.3d 89, 98 (2d Cir. 2015) ("[T]he ADA imposes no liability for an employer's failure to explore alternative accommodations when the accommodations provided to the employee were plainly reasonable."). Additionally, employers are not required to provide the best possible accommodation or the employee's preferred accommodation, only a reasonable one. *Crabill v.*

13

*Charlotte Mecklenburg Bd. of Educ.*, 423 F. App'x 314, 2011 WL 1491230, at *8 (4th Cir. 2011) (unpublished); *Fink v. Richmond*, 405 F. App'x 719, 723 (4th Cir. 2010) (unpublished, *per curiam*); *Walter*, 232 F.3d 892, 2000 WL 1587489, at *5; *Crawford v. Union Carbide Corp.*, 202 F.3d 257, 1999 WL 1142346, at *4 (4th Cir. 1999) (unpublished, *per curiam*).

In this case, the jury reasonably could have concluded that the Town's duty to engage in the interactive process did not arise because the Plaintiff gave very little indication that he desired an accommodation besides the leave that was provided to him. Police Chief Donnelly testified that the only discussion he had with Plaintiff concerning his requests for an accommodation was the Plaintiff's passing comment to "put him up there," an apparent reference to the records department. Examining the evidence presented at trial, the jury justifiably could have concluded that Plaintiff had not adequately communicated his desire for an alternative accommodation and that the Town was not on notice of his desire for another accommodation.

Even if the Town failed to engage in an interactive process, this fact alone does not require a Plaintiff's verdict on Count I. As discussed *supra*, the ADA only protects "qualified individuals" from discrimination in employment. The jury had sufficient evidence to conclude that Plaintiff was not a "qualified individual" because he was either unable or unwilling to return to work even after expending his FMLA leave. The jury also had sufficient evidence to conclude that Plaintiff was, in fact, provided a reasonable accommodation in the form of additional leave. The provision of a reasonable accommodation ends the inquiry because the

Town was not required to provide Plaintiff's preferred accommodation, and Plaintiff cannot hold the Town liable for the mere failure to engage in an interactive process.

## CONCLUSION

For the foregoing reasons, Plaintiff's Motion to Alter and Amend the Judgment, and for Directed Plaintiff's Verdict, on Count I (ECF No. 106) is DENIED.

A separate Order follows.

Dated: October 15, 2019

/s/ Richard D. Bennett
Richard D. Bennett
United States District Judge